## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JAMES W. MOELLER,                                 )
                                                  )
                Plaintiff,             )
                                                  )
      v.                              )          Civil Action No. 15-0724 (ABJ)
                                                  )
CHERYL A. LAFLEUR,                                )
*Acting Chairman, Federal Energy*                 )
*Regulatory Commission*,[1]                       )
                                                  )
              Defendant.             )
                                                  )
_____

### MEMORANDUM OPINION

Plaintiff James W. Moeller is an energy lawyer in his late fifties who has applied for several attorney positions at the Federal Energy Regulatory Commission ("FERC"). He has been neither hired nor interviewed, and he brought this lawsuit against the Acting Chairman of FERC, Cheryl A. LaFleur, alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). Compl. [Dkt. # 1]. The complaint alleges a single act of age discrimination arising out of the agency's decision to not interview plaintiff for an attorney position in 2014, and it also alleges that the agency's decision to not interview him was part of a pattern or practice of age discrimination. *Id.* ¶¶ 21, 39. The parties have both moved for summary judgment. While plaintiff attributes his non-selection to his age, defendant maintains that the decision not to interview him was made because the agency was looking for specific type of experience – prior litigation in federal court – and plaintiff lacked that experience. Because the plaintiff has not identified evidence from which a reasonable juror could conclude that the agency's explanation is

_____

1      Plaintiff's complaint named former Chairman of the Federal Energy Regulatory Commission Norman C. Bay. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor as defendant.

a pretext for discrimination, the Court will grant the agency's motion and deny plaintiff's motion. This opinion is not meant to suggest that plaintiff is not qualified for an attorney position in the energy field – it is simply that he has failed to point to evidence from which a jury could find that FERC officials lied when they said they did not interview him for an enforcement position because he lacked litigation experience.

## BACKGROUND

### I.      Factual Background

Plaintiff was born in 1958, and he is a graduate of Harvard Law School.  Compl. ¶¶ 4, 32; Def.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 24] ("Def.'s Cross-SOF") ¶ 57; Pl.'s Resp. to Def.'s Cross-SOF [Dkt. # 29] ("Pl.'s Cross-SOF") ¶ 57.  From 1984 through 2013, plaintiff's legal practice centered around energy regulatory law.  Def.'s Cross-SOF ¶¶ 59–70;  Pl.'s Cross-SOF ¶ 59–70.[2]  And from 2013 onward, plaintiff has been unemployed.  Def.'s Cross-SOF ¶¶ 70–71; Pl.'s Cross-SOF ¶¶ 70–71.

Plaintiff has applied for numerous attorney positions at FERC:  as relevant to this case, he submitted applications for attorney positions at FERC in 2010, 2013, and 2014.  *See* Compl. ¶¶ 22–26.  He alleges that the 2010 and 2013 applications show the beginning of a pattern or practice of age discrimination, *see id.* ¶ 41, and that the non-selection in 2014 was a result of age discrimination.  *Id.* ¶ 39.

---

2      Plaintiff disputes the agency's contention that his work at a particular law firm primarily involved "one client, ITC Holdings," and that "most of his work for that client involved a proposed merger," Def.'s Cross-SOF ¶ 69; Pl.'s Cross-SOF ¶ 69, but he does not provide any reasons for the dispute.  By not stating the specific objection with a citation to record evidence, plaintiff has not complied with either Federal Rule of Civil Procedure 56(c)(1)(A), or with Local Civil Rule 7(h)(1).  In any event, the specific nature of plaintiff's duties when he represented ITC Holdings is not material to the question of whether FERC engaged in age discrimination in this case.

## A.    The 2010 non-selection

In 2010, plaintiff applied to a FERC job announcement which sought mid-level and senior attorneys to work in its Office of General Counsel.  Def.'s Cross-SOF ¶ 3; Pl.'s Cross-SOF ¶ 3. The agency noted that it was particularly interested in "attorneys with electric energy experience particularly on reliability matters."  Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. [Dkt. # 17] ("Pl.'s SOF") ¶ 54; Def.'s Resp. to Pl.'s SOF [Dkt. # 24-6] ("Def.'s SOF") ¶ 54.  The position description noted that FERC sought attorneys "with a bachelor's degree or higher in electrical engineering, physical sciences, or mathematics, as well as attorneys possessing experience with complex bulk power systems engineering issues in the electric industry." FERC001538 [Dkt. # 24-2].

FERC received forty-seven applications in response to the 2010 job posting.  Pl.'s SOF ¶ 56; Def.'s SOF ¶ 56.  Approximately twelve individuals were interviewed, and eight applicants ultimately accepted positions.  *Id.*; Decl. of Christopher MacFarlane [Dkt. # 24-2] ("MacFarlane Decl.") ¶ 13; Ex. 12 to Decl. of Christopher MacFarlane [Dkt. # 28-9].  The candidates who were ultimately hired were of diverse ages – 35, 36, 38, 40, 40, 47, 51, and 53.  MacFarlane Decl. ¶ 13; Ex. 12 to MacFarlane Decl.  Plaintiff was offered neither an interview nor a position.  Pl.'s SOF ¶ 55; Def.'s SOF ¶ 55.

## B.    The 2013 non-selection

In 2012, FERC issued a job announcement seeking Attorney-Advisors in its Office of Enforcement.  Pl.'s SOF ¶ 23; Def.'s SOF ¶ 23.  According to the position description:

> FERC's Division of Investigations, within the Office of Enforcement, is seeking mid- and senior-level attorneys with litigation or energy law experience.
>
> Candidates must have substantial litigation experience preferably in prosecutorial, enforcement, white collar crime, or complex business litigation.  Hands on trial experience is required.

> Alternatively, candidates must have extensive experience in energy law, with a strong knowledge of FERC laws and regulations.  Attorneys accepted for this position will take on significant responsibility, including running their own investigations and enforcement actions.

FERC001528–31 [Dkt. # 24-2] ("2012 Posting").  Under the heading "Qualifications Required," the agency specified that a successful candidate "must possess experience in investigative work, litigation, or enforcement, or alternatively, in FERC practice, law and regulations."  *Id.*  FERC received over 1200 applications for that posting, and it interviewed sixty-six candidates.  Pl.'s SOF ¶ 27; Def.'s SOF ¶ 27.  Seven applicants were offered positions, Pl.'s SOF ¶ 27; Def.'s SOF ¶ 27; the ages of the successful candidates ranged from 31 to 61, and four of the seven were over 40. Ex. 4 to MacFarlane Decl. [Dkt. # 28-1].  The six applicants who were ultimately selected "had no energy regulatory experience but had substantial court litigation experience."  Decl. of Christopher MacFarlane [Dkt. # 24-2] ¶ 9; *see also* Exs. 5–10 to MacFarlane Decl. [Dkt. # 28-2].

Plaintiff applied for the 2012 posting on November 21, 2013.  Pl.'s SOF ¶ 26; Def.'s SOF ¶ 26.  Plaintiff was neither interviewed nor offered a position.  Pl.'s SOF ¶ 26; Def.'s SOF ¶ 26.

### C.    The 2014 non-selection

In the Spring of 2014, FERC issued a job announcement for an Attorney-Advisor position in the Office of Enforcement.  Pl.'s SOF ¶ 1; Def.'s SOF ¶ 1.  The announcement includes the same description of the duties and qualifications as the 2012 Posting.  *See* FERC001542–45 [Dkt. # 24-2] ("2014 Posting").  FERC received 128 job applications and interviewed five of those individuals.  Pl.'s SOF ¶ 6; Def.'s SOF ¶ 6.

Of the five candidates who received interviews, the parties described three in their statements of fact:

- Candidate 1 graduated from Wake Forest University Law School in 2009.  The candidate had approximately four years of experience as an associate at a law firm. The candidate first-chaired a bench trial in D.C. Superior Court, and participated in

4

two other jury trials.  The candidate first-chaired nine depositions and second-chaired 30 others, and handled over ten expert witnesses in various matters. FERC000002 [Dkt. # 18] at 47.  Candidate 1 declined FERC's invitation to interview.  Pl.'s SOF ¶ 14; Def.'s SOF ¶ 14.

- Candidate 2 graduated from Yale Law School in 2007.  The candidate served as a litigation associate at various law firms for approximately seven years.  The candidate's experience included leading an internal investigation on behalf of a Fortune 500 company; defending a commodity trainer in a criminal case; and conducting extensive fact discovery in various litigations.  FERC000055 [Dkt. # 18] at 53.  The interviewers for Candidate 2 noted that he "ha[d] no particular interest in energy," and also noted that "[h]e has never argued a motion or worked on a trial team although he did cross a witness in a pro bono hearing before an [Administrative Law Judge]."  Pl.'s SOF ¶ 19; Def.'s SOF ¶ 19.

- Candidate 3 graduated from Texas A&M Law School in 2002.  The candidate worked as a litigation associate at a law firm for approximately nine years, took and defended dozens of depositions of fact and expert witnesses, and acted as first chair for national software company in fraud litigation.  FERC000068 [Dkt. # 18] at 63. The FERC employees who interviewed Candidate 3 concluded that the candidate "lacked energy experience."  Pl.'s SOF ¶ 16; Def.'s SOF ¶ 16.

Plaintiff was not offered an interview.  Pl.'s SOF ¶ 5; Def.'s SOF ¶ 5.  In the end, no job offers were made to candidates who applied for the 2014 posting – the agency later explained that no applicant demonstrated the "optimal knowledge, skills, abilities and qualifications" that it was looking for.  Pl.'s SOF ¶ 8; Def.'s SOF ¶ 8.

## II.    Procedural History

On May 13, 2015, plaintiff filed a single-count complaint alleging that his non-selection for the 2014 position constituted age discrimination in violation of section 633a of the ADEA. Compl.  The complaint also states that "the adverse employment decision of September 22, 2014 is consistent with prior employment decisions dating back to approximately 2010."  *Id.* ¶ 21; *see also id.* ¶ 41 ("Since approximately 2010, Plaintiff has suffered several adverse employment decisions due to intentional discrimination on the part of the Commission due to his age.").  In the parties' joint report submitted in accordance with Local Civil Rule 16.3, plaintiff argued that he

was entitled to discovery as to FERC's decisions not to select him for the prior vacancies, so that he could "use the product of that discovery as evidence to support his claim in this case, i.e., to show a pattern of age discrimination," even though he never separately administratively exhausted any claims arising out of those decisions.  Parties' Report to the Court & Discovery Plan [Dkt. # 7] ("16.3 Report") at 2.  Defendant opposed the request, arguing that each non-selection was a "discrete act[] and unrelated to the selection at issue in this case."  *Id.*  The Court heard argument on the matter at the initial scheduling conference held on December 9, 2015.  *See* Min. Entry (Dec. 9, 2015).  In its scheduling order, the Court ruled that "[g]iven the limited number of positions involved and the fact that it is only a five-year time period at issue," the agency was required to "produce the applications of the other candidates who were interviewed to fill the four positions for which plaintiff applied, even though the positions were not all within the same component of the agency and the decisions were not all made by the same agency officials."  Scheduling Order [Dkt. # 10] at 1–2.

On August 26, 2016, plaintiff moved for summary judgment.  Pl.'s Mot. for Summ. J. [Dkt. # 17] ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 17] ("Pl.'s Mem.").  On October 19, 2016, defendant opposed the motion and filed a cross-motion for summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 24] ("Def.'s Cross-Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. & in Opp. to Pl.'s Mot. [Dkt. # 24] ("Def.'s Cross-Mem.").  Plaintiff replied in support of his motion and opposed the cross-motion on November 14, 2016, Pl.'s Opp. to Def.'s Cross-Mot. [Dkt. # 29] ("Pl.'s Cross-Opp."), and defendant filed a cross-reply in support of its motion on December 1, 2016.  Reply Mem. in Supp. of Def.'s Cross-Mot. [Dkt. # 33] ("Def.'s Cross-Reply").

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).

## ANALYSIS

Plaintiff alleges that FERC discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA").  The ADEA provides that all personnel decisions made by federal agencies "affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C.§ 633a(a).  Plaintiffs who are able to proffer direct evidence of discrimination are generally entitled to a trial.  *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014), quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013).[3]  In the absence of direct evidence of discrimination, ADEA claims are analyzed under the burden-shifting framework applicable to claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, *id.*, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1154–55 (D.C. Cir. 2004); *see also Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013).

As the D.C. Circuit has explained, to establish liability under the ADEA against a federal government defendant, a plaintiff may proceed in one of two ways.  "First, [he] can make use of the *McDonnell Douglas* evidentiary framework to establish that age was the but-for cause of the challenged personnel action."  *Ford v. Mabus*, 629 F.3d 198, 207 (D.C. Cir. 2010).  "Second, [plaintiff] may establish liability by showing that age was *a factor* in the challenged personnel action."  *Id.* (emphasis added).  Under the second approach, a plaintiff may prevail even "where

---

3     Plaintiff does not explicitly assert that there is direct evidence of discrimination in this case. In his motion for summary judgment, he points to certain federal government policies relating to the hiring of younger employees, and he argues that those policies are "inconsistent with the ADEA" and therefore "against the law."  *See* Pl.'s Mem. at 12–14, citing Exec. Order No. 13562, 75 Fed. Reg. 82,585 (Dec. 30, 2010).  But the policies are not at issue in this case.  Plaintiff did not challenge the legality of those policies in his complaint, and he did not apply for positions subject to that Executive Order.  So there is no direct evidence of discrimination in this case.

the employer acted with mixed motives." *Id.* at 203. "Specifically, 'once a plaintiff . . . shows that [discriminatory animus] played a motivating part in an employment decision, the [employer] may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [discriminatory animus] to play such a role." *Id.* at 203–04, quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45 (1989). Although plaintiff "may establish section 633a liability" on the mere showing that "age was a factor" in the agency's decision, he is entitled only to "declaratory and possibly injunctive relief," but not "instatement and backpay." *Id.* at 207. "For those types of remedies, a but-for standard of causation is necessary . . . ." *Id.*

Here, plaintiff has specifically alleged that age discrimination was the reason for the agency's decision not to offer him a position. Compl. ¶ 19 ("Plaintiff alleges that he was not invited to interview for the position and was not hired for the position in Job Announcement OE-ATTY-2014-0001 *because of* his age.") (emphasis added); *id.* ¶ 39 ("*Because of his age*, Plaintiff was not invited by the Commission to interview . . . .") (emphasis added); *id.* ¶ 40 ("Plaintiff suffered an adverse employment decision . . . *due to his age*.") (emphasis added); *id.* at 8 (requesting that the Court award legal and equitable relief to compensate plaintiff for the "lost income and benefits, and loss of professional reputation and career opportunities, that Plaintiff would have received *but for* the unlawful conduct of Defendant") (emphasis added). Therefore, the Court is required to apply the *McDonnell Douglas* framework to his age discrimination claim.[4]

---

4       Plaintiff references the mixed-motive standard in his memorandum in support of his motion for summary judgment, Pl.'s Mem. at 11–12; *see also* Pl.'s Cross-Opp. at 3, but he does not apply the legal test to his claim, nor does  he point to any evidence that shows, in his view, that age was even *a* factor in the decision in question.  Thus, even if he had included a mixed motive theory in his complaint, he has not put forth sufficient facts to create a genuine issue of fact on the question of whether age was "a factor" in the agency's decision not to hire him.

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Once the plaintiff has established the *prima facie* case, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for its actions. *Id.* at 253; *see also Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016). If the employer comes forward with a legitimate and nondiscriminatory reason, the plaintiff must then show that the employer's stated reason was pretext for discrimination. *Nurriddin*, 818 F.3d at 758. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

At the summary judgment stage, where the employer has asserted a legitimate and non-discriminatory reason for its decision, the burden shifting framework "disappears," *Nurriddin*, 818 F.3d at 758, and the "operative question" is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Wilson*, 753 F.3d at 247, quoting *Ayissi-Etoh*, 712 F.3d at 576.

Plaintiff's discrimination claim boils down to his claim that he was entitled to a job with FERC because he was more qualified than the people who were interviewed. *See* Pl.'s Mem. at 15–42. But plaintiff's claim fails because he has failed to come forward with any evidence to suggest that the agency's hiring decisions were discriminatory.

I.      **The agency's decision to not offer plaintiff an interview in 2014 was not pretext for age discrimination.**

A.      **Legal Standard**

A plaintiff alleging that his employer acted for an unlawful discriminatory reason may avoid summary judgment by identifying evidence from which a reasonable jury could find that the employer's proffered, lawful reasons for acting "were pretextual," *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999), or, in other words, "unworthy of credence." *Burdine*, 450 U.S. at 256. "Showing pretext, however, requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014). It is not sufficient to "show that a reason given for a job action [was] not just, or fair, or sensible;" nor is it sufficient to challenge "the 'correctness or desirability' of [the] reasons offered." *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), quoting *Pignato v. Am. Trans. Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994); *id.*, quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992). The plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were "phony." *Id.*, quoting *Pignato*, 14 F.3d at 349. In other words, "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

In evaluating the employer's stated reason, the Court must assess whether the stated reason is both "honest" and "reasonable." *DeJesus v. WP Co.*, 841 F.3d 527, 534 (D.C. Cir. 2016).

> To be clear, courts should not evaluate the reasonableness of the employer's business decisions, such as whether it made financial sense to terminate an employee who generated substantial revenue . . . . Rather, the factfinder is tasked with evaluating the reasonableness of the decisionmaker's *belief*

> because honesty and reasonableness are linked:   a belief may be so
> unreasonable that a factfinder could suspect it was not honestly held.

*Id.* (emphasis in original)

### B.   Plaintiff has not met his burden to rebut defendant's legitimate, nondiscriminatory reason.

The agency has explained that it has a legitimate and non-discriminatory reason for not selecting plaintiff to interview for a position with the agency in response to the 2014 vacancy announcement:  he did not have the sort of experience that the agency was particularly looking for. The hiring manager, David Applebaum, testified at his deposition that the agency was specifically looking for attorneys with litigation experience:  "[I]t didn't matter what the subject matter was. It mattered were you in court?  Were you doing depositions?  Were you working with experts?" David Applebaum Dep. Tr. [Dkt. # 24-4] ("Applebaum Dep.") at 59:14–22.  This explanation is sufficient to meet defendant's burden to identify a legitimate, nondiscriminatory basis for the decision.  *See Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006).

The burden therefore shifts back to the plaintiff.   At this point, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."  *Id.* at 896–97, quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  "All of the evidence" means

> any combination of (1) evidence establishing the plaintiff's prima
> facie case; (2) evidence the plaintiff presents to attack the
> employer's proffered explanation for its actions; and (3) any further
> evidence of discrimination that may be available to the plaintiff,
> such as independent evidence of discriminatory statements or
> attitudes on the part of the employer.

*Id.* at 897.  When assessing whether the plaintiff has met his burden to show pretext in a nonselection case, "the court must respect the employer's unfettered discretion to choose among qualified candidates," *Fischbach*, 86 F.3d at 1183, because to do otherwise "would be to render

the judiciary a super-personnel department that reexamines an entity's business decisions – a role [courts] have repeatedly disclaimed." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008), quoting *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007); *DeJesus*, 841 F.3d at 534.

Plaintiff offers four reasons why the agency's qualifications-based explanation is unworthy of credence.  He argues that FERC's claimed need for federal court litigation experience is:  (1) inconsistent with prior testimony by the FERC Chairman, and with prior legal positions taken by the agency other litigation; (2) inconsistent with the plain language of the vacancy announcement and notes of the interviews conducted in 2014; (3) undermined by the lack of material differences between federal court litigation and litigation before administrative agencies; and (4) unworthy of credence since he was more qualified than the candidates who were interviewed.  *See* Pl.'s Cross-Opp. at 3–19.  But plaintiff has failed to point to any facts that create a genuine issue for trial.  Because the Court concludes that plaintiff has failed to adduce evidence that could lead a reasonable juror to find defendant's explanation to be a pretext for age discrimination, it will grant defendant's motion and deny plaintiff's motion.

        **1.     Neither Chairman Bay's congressional testimony, nor the position FERC has taken in federal court, is inconsistent with FERC's desire for attorneys with litigation experience.**

Plaintiff argues that FERC has taken the legal position – both before Congress and in court – that the courts should not  review its administrative decisions *de novo*.  *See* Pl.'s Cross-Opp. at 4–9.  So, he argues, if FERC does not intend to litigate in federal court, why would it need litigators?  *Id.* at 6, 9.  But even if were appropriate for the Court to second guess the agency's ranking of its hiring criteria, which it is not, plaintiff misunderstands FERC's legal position.

The Federal Power Act, as amended in 1986, provides that a federal district court "shall have the authority to review *de novo* the law and the facts involved" in certain FERC civil penalty

enforcement proceedings brought in federal court.  16 U.S.C. § 823b(d)(3)(B).  In 2014, Norman

C. Bay, who is now the former Commissioner of FERC, was asked about that provision in

connection with his Senate confirmation hearing.  In response to a supplemental question for the

record posed by Senator Lee, Chairman Bay offered an interpretation of the civil penalty

enforcement statute:

> This statutory provision clearly provides that a federal court has the
> authority to review the law and the facts underlying the penalty assessment
> *de novo*.  It does not state that the district court should simply affirm the
> penalty assessment without review or follow the same approach it would
> take under the Administrative Procedure Act – and FERC has not argued
> otherwise.  FERC has argued that, in conducting the *de novo* review, the
> federal court can, and should, limit its review to the Commission's
> assessment order and the record and briefing underlying that order.  But
> FERC has also argued that the court has the authority to require additional
> hearings, including a trial, if the court determines that would be useful in
> carrying out its . . . review.  Ultimately, the federal courts will decide what
> this statutory provision means, and FERC will of course abide by those
> decisions.

Resps. to Questions for the Record, Hr'g on Nominations of Ms. Cheryl A. LaFleur & Mr. Norman

C. Bay Before the S. Comm. on Energy & Natural Res., S. Hr.'g 113-288 (2014), http://go.usa.gov/

x9uPU ("Bay Responses") at 33.  And in response to a follow-up question which asked whether

the statute gives "the district court authority to conduct its own discovery during its *de novo* review

of the penalty assessment, separate and apart from the record developed by FERC through its

administrative processes," Chairman Bay answered, "Yes."  *Id.*

Plaintiff insists that Chairman Bay "testified before Congress that a FERC enforcement

action in federal district court requires not a trial but merely the type of review conducted by a

federal court of appeals under the [Administrative Procedure Act]."  Pl.'s Cross-Opp. at 5–6.

Plaintiff misreads Chairman Bay's statement, which plainly contemplated both APA-style review

and traditional *de novo* litigation.  So plaintiff's rhetorical question – "why would FERC need

attorneys with substantial federal court trial experience" when its Chairman "did not believe that

the Federal Power Act provided for *de novo* trials in federal courts?" *id.* at 6 – lacks any foundation

in the proffered testimony, and no reasonable juror would find that it proves pretext.  Moreover,

the statute provides for *de novo* review notwithstanding what the Chairman's views might have

been on the matter.

Plaintiff points next to legal arguments that FERC has advanced in particular cases.  He

observes that FERC has argued in certain cases that a trial would be unnecessary, and that the court

should affirm an assessment of civil penalties on the basis of the record before the agency.  Pl.'s

Mem. at 38–40.  Based on that, he repeats:  "If FERC believed that *de novo* reviews in federal

court did not require actual trials, then it would not have needed attorneys with actual federal court

trial experience."  *Id.*  But as Chairman Bay explained to Congress, while FERC has agreed that

the courts should limit their review to the administrative record underlying an assessment of civil

penalties, the agency would "abide by [the] decisions" of the federal courts.  Bay Responses at

33.[5]

None of this illuminates the question of whether the agency's stated reason for not hiring

plaintiff – his lack of federal court litigation experience – was both honest and reasonable.  *See*

*DeJesus*, 841 F.3d at 534.  The inference plaintiff seeks to draw from FERC's legal arguments

does not follow, and in raising these questions, plaintiff has not pointed to any facts that contradict

the testimony proffered by the agency that a decision was made in 2014 to look for federal court

---

[5]     As it turns out, the federal courts have not adopted FERC's position.  In fact, courts have
been critical of it.  *See, e.g.*, *FERC v. Maxim Power Corp.*, 196 F. Supp. 3d 181, 192–94 (D. Mass.
2016) (surveying cases across the country and concluding that the Federal Power Act's civil
enforcement provision "call[s] for a trial *de novo* subject to the Federal Rules of Civil Procedure
applicable in an ordinary civil action"); *FERC v. City Power Mktg.*, *LLC*, 199 F. Supp. 3d 218,
230 (D.D.C. 2016) (agreeing with the reasoning in *Maxim Power* and concluding that
"[n]otwithstanding the significant proceedings that occurred at the agency level," the action will
be treated "as a standard civil action, governed by the Federal Rules of Civil Procedure").

litigators to assist with the agency's work.  So the Court finds that no reasonable juror would find the agency's explanation for rejecting him to be pretextual simply because the agency has at one time taken a legal position that federal court review of its decisions should be circumscribed and based on the administrative record.

### 2. Neither the vacancy announcement, nor the notes of the interviewers, prove pretext.

Plaintiff argues next that the "plain language" of the 2014 vacancy announcement, and notes made by the interviewers in connection with certain candidates, prove that defendant's explanation is pretextual.  *See* Pl.'s Cross-Opp. at 9–13.

In the 2014 vacancy announcement, the agency sought candidates with "experience in investigative work, litigation, or enforcement, or alternatively, in FERC practice, law and regulations."  2014 Posting.  Plaintiff argues that vacancy announcement proves that the agency's explanation is unworthy of credence because it reflects that the agency contemplated that it would interview both litigators and energy regulatory experts.  Pl.'s Cross-Opp. at 9–10.

It is true that the vacancy announcement invited individuals with two kinds of relevant experience to apply, and plaintiff's resume fell within one of two categories of applicants described as meeting the minimum requirements.  But that does not mean that FERC was required to interview all candidates, or to interview the plaintiff, instead of looking first to individuals who fell within the first category, and therefore, according to Applebaum, were more attractive on paper given the agency's assessment of its needs.  In other words, the agency was free to rank the applicants and interview those it preferred as long as its stated reason for the preference is not a cover for discrimination.

Plaintiff also points to the notes of the interviewers from the 2014 vacancy announcement. He argues that the interview notes "go to the credibility of the explanation offered by Mr.

Applebaum": if FERC honestly believed that it was looking for litigators, "then the FERC staff that interviewed the job applicants would not have expressed concern in their interview notes with the lack of energy regulatory experience of the job applicants interviewed." Pl.'s Cross-Opp. at 13. But that does not necessary follow – there is no reason why the agency could not have been hoping that it would discover litigators with some background in the substantive area as well, and that interviewers would find the absence of that knowledge base to be worth noting.

"Showing pretext . . . requires more than simply criticizing the employer's decisionmaking process." *Hairston*, 773 F.3d at 272. The D.C. Circuit has instructed that courts should avoid "evaluat[ing] the reasonableness of the employer's business decisions," *DeJesus*, 841 F.3d at 534, and it has cautioned that courts do not sit as a "super-personnel department." *Id.*, quoting *Adeyemi*, 525 F.3d at 1227. Instead, the Court is called upon to consider whether the agency's beliefs were honest and reasonable. *Id.* And the fact that plaintiff has come forward with some evidence to show that the agency solicited applications from energy lawyers and inquired about the litigators' backgrounds in energy does not constitute proof that Applebaum did not honestly believe that he intended to hire litigators, particularly when all of the candidates who were interviewed had that experience.

Had plaintiff come forward with evidence that FERC interviewed younger applicants who, like him, only had energy experience, and lacked federal litigation experience, it would be a closer question. But the only interviewees plaintiff brought to the Court's attention were all selected because of the litigation work on their resumes.

### 3. Plaintiff did not have significantly more federal court litigation experience than the applicants selected for interviews in 2014.

Plaintiff's final ground for establishing pretext – that he was significantly more qualified than the candidates who received interviews – is also insufficient to enable a reasonable jury to

conclude that plaintiff's non-selection was actually the result of discrimination.  For an inference of pretext to arise from a qualifications gap, the plaintiff must possess a "stark superiority of credentials," *Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010), quoting *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003), so that the qualifications gap is "great enough to be inherently indicative of discrimination." *Adeyemi*, 525 F.3d at 1227, quoting *Jackson*, 496 F.3d at 707; *see also Lathram*, 336 F.3d at 1091 (finding the qualifications gap significant because "there was a wide and inexplicable gulf between the qualifications" of the two candidates); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.").

According to the hiring manager, the agency was specifically looking for attorneys with litigation experience.  Applebaum Dep. at 59:14–22.  He explained that "it didn't matter what the subject matter was.  It mattered were you in court?  Were you doing depositions?  Were you working with experts?" *Id.*

In the resume that plaintiff submitted to the agency in response to the 2014 vacancy announcement, he included only one conclusory reference to federal court litigation experience: in his first job after law school, plaintiff worked as an associate from 1984 until 1987 at the law firm of LeBoeuf, Lamb, Leiby & MacRae.  Att. B to Compl. [Dkt. # 1].  Plaintiff described his duties at the firm:

> Specialized in administrative hearings on behalf of electric utilities before NRC, FERC, and other federal agencies.  Litigated in both federal and state courts.  Responsible for several hearings related to the March 1979 Three Mile Island nuclear power plant accident.

*Id.* And that description does not address whether plaintiff was "in court," "doing depositions," or "working with experts." *See* Applebaum Dep. at 59:14–22.

By contrast, the resumes for each of the candidates that were interviewed in response to the 2014 vacancy listed concrete litigation skills: Candidate 1, who had been a litigation associate for four years, "[f]irst chaired" a bench trial in D.C. Superior Court, "[f]irst chaired" nine depositions, and "[a]cted as primary handler for over ten expert witnesses." FERC000002. Candidate 2 had more than seven years of experience, including conducting and defending depositions, drafting motions, and preparing discovery requests and responses. FERC000055. And Candidate 3 had approximately nine years of experience, including as "[t]rial counsel in employment discrimination case." FERC000068. Candidate 3 had also "deposed government witnesses and defended depositions of company witnesses," and had "retained and developed expert witnesses on damages and government contracting issues." *Id.*

Plaintiff attempts to disparage the experience of the applicants who were interviewed. *See* Pl.'s Cross-Opp. at 16 ("Aspiring litigators? Presumably. Litigators-in-training? Arguably. But certainly not litigators with substantial litigation experience."). But plaintiff does not – and cannot – prove that his litigation experience evinces a "stark superiority of credentials," *Porter*, 606 F.3d at 816, quoting *Stewart*, 352 F.3d at 429. Indeed, when he was an associate, his litigation experience was mixed with other regulatory and administrative work, and his stint as a litigator – even if he had been occupied with that work full time – did not last as long as the least experienced of the three candidates he mentions.

Plaintiff argues that his thirty years of total legal experience should be the sole deciding factor in this regard. *See* Pl.'s Cross-Opp. at 19 (arguing that his "thirty years of legal experience" provides the relevant comparator). But his work in energy law and policy, while it may be a

significant credential, does not make his litigation experience starkly superior to that of the other candidates whose experience he derides. At bottom, plaintiff's point of view is that the more sensible employment decision would have been to hire him. But that does not constitute evidence which would tend to show that the failure to do so was discriminatory. *See DeJesus*, 841 F.3d at 534. There is unrebutted evidence in the record that Applebaum wanted to hire litigators, the evidence shows that the agency only interviewed litigators, and there is nothing in the record that shows that the agency has concocted a false excuse for its failure to interview plaintiff beyond plaintiff's confidence in his own credentials.[6]

## II.   Plaintiff cannot show that his non-selections in 2010 and 2012 show a pattern or practice of age discrimination.

Plaintiff alleged in the complaint that the non-selection in 2014 "is consistent with prior adverse employment decisions dating back to approximately 2010." Compl. ¶ 21. In plaintiff's motion for summary judgment, he seems to argue both that his unsuccessful applications for employment in 2010 and 2012 were discriminatory, and that this "pattern or practice of age discrimination" is evidence that sheds light on the 2014 decision. *See* Pl.'s Mem. at 8 ("This case concerns a sole claim that Defendant, between 2010 and 2014, discriminated against Plaintiff because of his age . . . . The complaint also alleges a pattern of FERC age discrimination in connection with two prior job applications submitted by Plaintiff to Defendant.").

---

6       Plaintiff contends that the agency has not proved that there is a material difference between litigation before administrative agencies and litigation in federal court. Pl.'s Cross-Opp. at 13 ("FERC still has not explained to this Court how litigation *qua* administrative adjudication differs materially from litigation *qua* federal trials."). But here he is asking the Court to substitute its assessment of the agency's hiring needs for the agency's, and that is not the role of the Court at the summary judgment stage. Plaintiff's opinion on this matter does not constitute evidence that the agency was lying when it said what it was looking for.

A federal employee who seeks to sue his agency for discrimination under the ADEA must timely exhaust administrative remedies before bringing suit.  29 U.S.C. § 633a(d); *see Rann v. Chao*, 346 F.3d 192, 195–99 (D.C. Cir. 2003).  To the extent that plaintiff's complaint can be read as asserting standalone claims of discrimination arising from his 2010 and 2012 applications, those claims fail because – as plaintiff admits – he did not administratively exhaust them.  *See* 16.3 Report at 2 (admitting that plaintiff "did not comply with the notification requirements in the ADEA as to [the 2010 and 2012] non-selections").[7]  So the only individual claim before the Court arises out of the 2014 application.

Nor can plaintiff succeed on a "pattern or practice" claim.  The D.C. Circuit has made clear that "[d]isparate treatment claims brought under the ADEA may involve 'an isolated incident of discrimination against a single individual, or . . . allegations of a 'pattern or practice' of discrimination affecting an entire class of individuals."  *Aliotta v. Bair*, 614 F.3d 556, 562 (D.C. Cir. 2010) (involving an age discrimination claim brought by a class of approximately 100 current and former employees of the Federal Deposit Insurance Corporation who were targeted for buyouts or early terminations as a result of the agency's efforts to downsize), quoting *Palmer v. Shultz*, 815 F.2d 84, 90 (D.C. Cir. 1987) (involving sex discrimination class action involving a class of female Foreign Service workers).

In order to make out a *prima facie* pattern or practice claim, a plaintiff must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts" – a plaintiff

---

7       Plaintiff's insistence in his summary judgment briefing that he may seek relief for discrimination claims with regard to "a sole claim" of discrimination "between 2010 and 2014," Pl.'s Mem. at 8, appears to be inconsistent with the argument that plaintiff made in the parties' joint discovery report, that he was not alleging discrete acts of discrimination arising out of the alleged pre-2014 conduct.  *See* 16.3 Report at 2 (conceding that "[p]laintiff does not seek damages for those earlier [pre-2014] non-selections").

must establish that "discrimination was the [employer's] standard operating procedure [–] the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336; *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (applying the *Teamsters* framework to the ADEA).

Plaintiff does not allege – let alone prove – that the few alleged incidents of age discrimination that were directed at him were part of a pattern or practice of discriminating against older applicants as a class, or were part of the agency's modus operandi – he doesn't identify anyone else who was a victim of age discrimination. So to the extent that plaintiff meant to allege a pattern or practice of discrimination, his claim fails.[8]

---

8       Defendant argued in its cross-motion that the Court should "reconsider" its ruling that allowed plaintiff to seek discovery about the 2010 and 2012 non-selections, *see* Def.'s Cross-Mem. at 41–42, and plaintiff opposed the request for "reconsideration." Pl.'s Cross-Opp. at 19–22. In defendant's cross-reply, the agency recognized that its request for the Court to "reconsider" its ruling was "poor wording," in light of the fact that "[d]iscovery had been completed, so there is nothing to reconsider." Def.'s Cross-Reply at 13–14. Defendant did not move to dismiss the pattern or practice aspect of plaintiff's claim, and the Court's ruling was limited to whether the limited number of applications over a limited time period would be discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). So there is nothing to reconsider.

**CONCLUSION**

Because plaintiff has not come forward with any evidence that age was the cause of his non-selections, and because plaintiff has not made out a prima facie case of a pattern or practice of age discrimination, plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 31, 2017